Mr. Wynick, let's just make sure your colleague is on. Mr. Matza-Brown, are you on? There you go. Okay. Yes, Your Honor. Mr. Wynick, you can proceed. Thank you, Your Honor. May it please the Court, my name is Matthew Wynick. I have on the poll with us, Mr. Matza-Brown, my co-counsel Yale Pollock, and we represent the plaintiff's appellants. As was foreseen by the dissent in Giglio v. Dunn, the district court here and district courts across the circuit have applied the majority's ruling in Giglio as a bright-line rule that coerced resignations cannot form the basis of a due process claim. Allowing this application to stand as the rule of the in Moffitt v. The Town of Brookfield, which noted that coerced resignations without due process are indeed a violation of Section 1983. Second, it would conflict with the law of other circuits across the country which have considered this very issue. Didn't we make a very strong distinction between cases in which somebody was forcibly terminated and cases in which somebody was put in a position where they resigned under duress? Wasn't that precisely the distinction that Giglio made and which the Supreme Court, in its opinion, louder, mill, that you cite so much, lived up with? And haven't we lived up with that distinction ever, ever since? So that because in your situation, you could have asked for a hearing, but you didn't before you resigned. So how are you in a situation in which you have been kicked out and you asked for a hearing before you are? I would push back, and I think that that was about to be my third point, which is the facts here are distinguishable from almost all of these other previous cases. And the fact here, first of all, the plaintiffs weren't able to ask for a hearing. That is scheduled and that is brought about by the NYPD. That's in their procedures. But we did all that we could do, which was, we said, investigate us. We're happy to sit down with investigators. And indeed, Mr. de Blasio was scheduled to have an interview. The NYPD canceled that interview and refused to schedule any other interviews. So arguably, that could have provided some process, and we might not be here today. But there wasn't even that minimal level of process given to these plaintiffs. And indeed, the arbitrator in the grievance proceeding said that there was a wall of silence from the NYPD, not providing any information whatsoever about what the NYPD suspected that these plaintiffs might have done. And that is what I think our fundamental issue here is, is that there wasn't even an inkling of an idea of what the NYPD could lawfully proceed on against these plaintiffs in hearing. And there was no mechanism for the plaintiffs to be able to initiate that on their own. All there was was the opportunity for informal discussions, which quite frankly happens all the time, where there are settlement discussions, where an employer might say, we have you dead to rights on such and such an infraction. We'll give you the opportunity to voluntarily leave. But that was not what happened here. There was no mention of any kind of... Post termination, is there not a process in place for review post termination? There is a process post termination. We don't dispute that. But we are... And haven't our cases held that that post termination process is sufficient to address the needs of due process? There are cases that suggest when there is minimal pre-deprivation process or when it's impracticable to provide any pre-deprivation process, an Article 78 or some other state remedy is adequate post deprivation. But as our argument here is, number one, there wasn't even minimal process. And number two, it wasn't in this particular case impracticable to give that minimal to process. It does make sense in a true classic constructive discharge case where an employer has no idea that an employee feels that they're suffering, that the workplace is so intolerable that they can't continue. In those cases, I would certainly agree that the employer is not in a position to foresee that their actions might result in an involuntary resignation. But here, that's precisely what the defendants wanted, was to avoid any process whatsoever. They didn't want to face the corruption issues. They didn't want to litigate those issues. They wanted to avoid all that process. And so they exerted extreme pressures, which weren't existing in just about any of the other due process cases that we're looking at. Even without any process whatsoever, the plaintiffs could have been demoted. There was no redress for that whatsoever. There was no Article 78 that could address that. There was no plenary action. There was no discrimination case. There was no retaliation case. They served at will in the higher ranks. They would face that immediate demotion. But I keep coming back to the fact that if you had not resigned, you would have been given a hearing because what you were threatened with was a hearing that might terminate you. So not only did you have the ex-post, post-termination process that we've said was sufficient, but in this case, you could have gotten a pre-termination hearing had you just asked for it. So I find your case offhand to be even simpler than many other cases where that Again, I would push back on that because in this case, as opposed to other cases where the threat was termination, they could have proceeded in a hearing, and that might have also still resulted in termination. But here, the plaintiffs were facing adverse actions that weren't going to be able to be challenged in any process. The demotions, they didn't have protection in the higher rank. So by being demoted, they would have immediately lost out on terms and conditions of employment that couldn't be redressed anywhere. And that is an extreme threat. The arbitrator recognized that that was so extreme that the retirements were not voluntary. The city knew that that was such a severe threat that if they employed that tactic, it would avoid having to go through the due process. And that's what we take issue with here, is that this is a loophole, an I think, that we would see that there are such extreme pressures that are able to be exerted, that there would be a due process violation for a forced resignation. But I think this is one of those cases because of the severity of the coercion that was exerted on these plaintiffs. Again, immediately, if they refuse to retire... This case is different from all those other cases because of the severity of the coercion. Is that the argument? Yes. But it also relates to the foreseeability. Because the coercion was so severe, it was foreseeable that by exerting those pressures, it would extract the resignations that the city wanted. Where in other cases, in Giglio, for instance, there was a conversation, at least. But in those other cases, the coercion, it's foreseeable that the employees would resign. I mean, and that's the point of the coercion, to coerce them into resigning. I'm not sure I see the distinction. I would use Giglio as a prime example of it. There was a conversation where the employer said, come back to work by date certain. The employee said he couldn't. And so there was at least a conversation and the employee knew the infraction of what she would face if he didn't report to work. He would be charged for not reporting to work. Here, they didn't get that process. There was no indication that, again, they offered to sit down with investigators to give their side of the story, to have that opportunity to be heard. It was the NYPD that denied them that opportunity and that coerced them with the extreme pressures of immediate demotion, coupled with everything that that would bring. The stigma attached to the loss of pay immediate, the loss of pension in the future. And again, there is no redress for that demotion. And then they would face the termination, which the NYPD had said was preordained. Thank you. You have some time for rebuttal. We'll hear from the other side. May it please the court. Daniel Monson Brown, Assistant Corporation Counsel for the Appellees. As Judge Calabresi is observed in his questions to the appellants, what the plaintiffs seem to be asking for is not information to avoid a risk of wrongful deprivation by the government, right? That's what the full-blown hearing would have done. What they appear to be asking for is additional information that would have given them a better chance to make a better informed decision about whether to retire rather than to face disciplinary proceedings. And that is simply not what the due process clause is meant to protect. I think that while my colleague for the appellants began by talking about a bright line rule in Giglio, what he now seems to be arguing is that this case is somehow exceptional as compared to others. And I think that that's simply not true. When we get to the question of the severity of the coercion, the claim here that the plaintiffs appear to be making is that they were coerced because they were not given process that they never actually asked for, right? The crux of the plaintiff's argument in their briefs is that they were denied notice of the particular charges against them so that that could better inform their decision about what terms upon which they might want to retire. And by their own allegations, there were days and, in fact, for some plaintiffs, weeks of back and forth between the plaintiffs and the department about whether the plaintiffs wanted to retire and if so, on what terms. They now claim that the deprivation of notice about the charges is what coerced them, but they never once during that lengthy back and forth ever even raised that as a consideration. So that the notion that there was more coercion. Counsel? Yes, Your Honor. Would this case be different if they had a property interest in the higher rank and they were put down to the lower rank of captains without any hearing or anything else? Would that make a requirement of pre-demotion perhaps something that's required? In the hypothetical you described, Your Honor, I believe that is the case because as I understand the hypothetical, you described a situation where they are demoted without any to balance the level of property interest against the burden of doing the pre-demotion process. I don't know how exactly the chips would fall. It would depend on the burden and the exigency to the government of the demotion, but that's not this case because as they concede, there's no property interest. But I think that to the extent that there's a demotion without a pre-demotion hearing, that hinges on the exigency of doing the demotion immediately, I believe is how the chips would fall in that hypothetical, Your Honor. But because they have conceded, right, and the law is clear that they could be demoted at will, right, that's not a consideration in this case. I think that the other point that the appellants try to make with respect to Giglio, right, which controls here, that is a controlling decision here, is they try to claim that this was either more coercive or that the plaintiff in Giglio had more notice. And I don't think that that is true either. The plaintiff in Giglio was on disability leave and he was told, despite being on disability leave, either you come back to work or your position is eliminated. That's not notice of a disciplinary infraction that he could defend in a disciplinary hearing. That was a choice between either coming to work or having his position abolished. That's very similar to a choice between retiring or going forward with the ample procedural protections that are afforded in a disciplinary hearing. None of the other cases from other circuits results in a different outcome here. I think that if we look at those cases that the appellants cite, only one from pre-Loudermill, the Feindeisen case from 1984, even finds a due process violation and the rest of the cases all find none. There's certain dicta about the narrow situations where such a due process claim might arise, but none of those come close to this case. Right here we have two paths, two paths that the appellants have to have their due process rights afforded to them. One is a pre-deprivation hearing, a public hearing with witnesses to be subpoenaed, discovery motions, a full panoply of protections to the officers, or if they opt to retire, they can then challenge that retirement in a post-retirement Article 78 proceeding. They opted for neither of those and instead they belatedly claim to this court that they should have been afforded a notice and an opportunity to be heard that they never requested at the time. On those allegations, there is simply no due process claim alleged here. This court should affirm. Thank you. Thank you. Mr. Wynick, you have some rebuttal. Thank you, Your Honours. Just shortly, I would just suggest that in specific facts and circumstances of every case to determine what level of process is owed. And here, again, there was a loophole that also concerned the Giglio dissent and the Fowler Court, I think in the Sixth or Fifth Circuit, which is that defendants could do as they have done here, which is say, we don't want to give you process. We are going to exert a pressure that is so severe, there is no other option but to tender a resignation. And that, again, is a fact here that is, I believe, distinguishable from every other case. The threat of a demotion from a high-ranking position, such as a deputy chief, accompanied by the loss of pay that that would bring, the loss of pension that that would bring, is so significant and so severe. These plaintiffs had no choice. And the defendants knew that. They avoided due process. There was no opportunity to ask anything further. It was demanded that they retire immediately. And that's the end of it. There was no availability for the plaintiffs to ask for the defendants to charge them. That's not the way that discipline works in the NYPD. It was incumbent on the NYPD to bring out charges or to at least, again, informally discuss what the charges were with the defendants, excuse me, with the plaintiffs when demanding their retirements. Thank you. Thank you both. The Court will reserve decision.